UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

REHABILITATION SUPPORT SERVICES,
INC., on its own behalf and on behalf of its
residents,

Plaintiff,

-against-                                              1:14-CV-0499 (LEK/RFT)

CITY OF ALBANY, NEW YORK,

Defendant.
_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

Plaintiff Rehabilitation Support Services, Inc. ("RSS" or "Plaintiff") filed this action against

Defendant City of Albany (the "City" or "Defendant"), challenging the City's zoning ordinance

under the Fair Housing Act ("FHA"), as amended by the Fair Housing Amendments Act of 1988

("FHAA"), 42 U.S.C. § 3601 *et seq.*, and Title II of the Americans with Disabilities Act ("ADA"),

42 U.S.C. § 12131 *et seq.*  See Dkt. No. 1 ("Complaint").  Presently before the Court is Defendant's

Motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. Nos. 11

("Motion"); 11-1 ("Memorandum").  For the following reasons, the Motion is denied.

## II.   BACKGROUND[1]

Plaintiff is a non-profit organization that operates residential programs for people with

_____

[1] Because this matter is before the Court on a motion to dismiss, the allegations of the
Complaint are accepted as true and form the basis of this section.  See Boyd v. Nationwide Mut. Ins.
Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir.
2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual
allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her
favor").

disabilities.  Compl. ¶ 4.  Currently, "[Plaintiff] is seeking to establish a residence for 24 people who are recovering from alcoholism and substance abuse at a site located at 292 Second Street, Albany, New York."  Id. ¶¶ 6, 12.  Alcoholism and substance abuse prevents these individuals from living with their families, and "significantly impacts . . . their ability to retain employment and perform other daily living activities."  Id. ¶ 11.  They must live in a residence of this type "because of their disability and in order to further their own recovery."  Id.  The proposed residence "will be licensed by the New York State Office of Alcoholism and Substance Abuse Services ("OASAS")."  Id. ¶ 14.

The City of Albany has a zoning ordinance, which regulates the types of buildings and building uses within the City.  Id. ¶ 15; see also generally City of Albany Zoning Ordinance ("Zoning Ordinance").[2]  Plaintiff's proposed residence is located in the R2A zone according to the City's Zoning Ordinance.  Compl. ¶ 18.  Under the Zoning Ordinance, "[o]nly single and two family residences and houses of worship are permitted in" an R2A zone, which is a residential zone.  Id. ¶ 20.  Certain multi-unit residences, such as dormitories, nursing homes, and bed and breakfasts, may obtain a special use permit to operate in an R2A district.  See id. ¶¶ 20-21; see also Zoning Ordinance § 375-64(C).  Other multi-unit dwellings, including Plaintiff's planned residence, must obtain a use variance in order to establish a residence in an R2A zone.  See Compl. ¶ 21.  The

---

[2] In considering a motion to dismiss under Rule 12(b)(6), the Court must "limit itself to a consideration of the facts that appear on the face of the complaint."  Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984).  "For purposes of this rule, 'the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'"  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citations omitted).  However, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  Id. at 153 (citation omitted). Though Plaintiff did not attach the Zoning Ordinance to the Complaint, Plaintiff relied on it heavily in stating its claim.  See generally Compl.  Therefore, the Court will consider facts apparent in the Zoning Ordinance in ruling on Defendant's Motion.

Zoning Ordinance requires residences for people with disabilities to seek a use variance in order to

establish a residence in any district in the City. See id. ¶ 23. The procedures for obtaining a use

variance differ from those required to obtain a special use permit. Compare Zoning Ordinance

§ 375-26, with id. § 375-27. For example, in order to obtain a use variance, an applicant is required

to show "that applicable zoning regulations and restrictions have caused unnecessary hardship." Id.

§ 375-26(2)(a). Though individuals seeking a special use permit must also go through an

application process, they need not show "unnecessary hardship" in order to obtain a permit. See

generally id. § 375-27. "[O]n or about April 2, 2014, the Albany Board of Zoning Appeals

[("BZA")] denied RSS' application for a [use] variance." Id. ¶ 22.

On April 30, 2014, Plaintiff filed the present action, alleging that the City's Zoning

Ordinance constitutes a facial violation of both the FHA and the ADA. See generally Compl.

Thereafter, Defendant filed the instant Motion. Mot. Plaintiff filed a response, Dkt. No. 15

("Response"), and Defendant in turn filed a reply, Dkt. No. 19 ("Reply"). On May 1, 2014, Plaintiff

filed a Petition in New York State Supreme Court, Albany County, pursuant to Article 78 of New

York State's Civil Practice Law and Rules, challenging the BZA's denial of its use variance

application. Dkt. No. 11-16, Ex. H ("Article 78 Petition").[3]

---

[3] Defendant filed Affidavits and Exhibits with the Motion, which present additional evidence
to the Court. See generally Dkt. Nos. 11-1 through 11-16. The Court may not consider these
Affidavits and Exhibits for the purpose of deciding Defendant's 12(b)(6) Motion. See Ryder
Energy Distrib. Corp., 748 F.2d at 779. However, the Court may consider documents outside the
pleadings in deciding a 12(b)(1) motion for lack of subject matter jurisdiction. Makarova v. United
States, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). Therefore, the Court considers facts
from Defendant's Affidavits and Exhibits only to the extent they are relevant to the issue of subject
matter jurisdiction. Defendant also specifically asks the Court to consider the BZA's written
determination explaining its denial of Plaintiff's use variance application. Mem at 20. However,
because Plaintiff challenges the Zoning Ordinance as facially unconstitutional and does not
challenge the BZA's specific determination in this action, see generally Compl., the BZA's written

3

III.    **LEGAL STANDARD**

   **A. Subject Matter Jurisdiction**

   "A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." <u>Makarova</u>, 201 F.3d at 113 (citing FED. R. CIV. P. 12(b)(1)).  "The standard for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is 'substantively identical' to the 12(b)(6) standard."  <u>Berkovitz v. Vill. of S. Blooming Grove</u>, No. 09 CIV 0291, 2010 WL 3528884, at *5 (S.D.N.Y. Sept. 3, 2010) (quoting <u>Lerner v. Fleet Bank, N.A.</u>, 318 F.3d 113, 128 (2d Cir. 2003)).  In considering a motion to dismiss under Rule 12(b)(1), a court must accept as true all material factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  <u>Buday v. N.Y. Yankees P'Ship</u>, 486 F. App'x 894, 896 (2d Cir. 2012).  However, the plaintiff bears the burden of establishing that a court has subject matter jurisdiction by a preponderance of the evidence.  <u>See Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading, Inc.</u>, 697 F.3d 59, 65 (2d Cir. 2012).  "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." <u>APWU v. Potter</u>, 343 F.3d 619, 623 (2d Cir. 2003) (citing <u>Shipping Fin. Servs. Corp v. Drakos</u>, 140 F.3d 129, 131 (2d Cir.1998)) (alteration in original).

   When a defendant "moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." <u>U.S. ex rel. Kreindler & Kreindler v. United Tech. Corp.</u>, 985 F.2d

---

determination denying Plaintiff's use variance application is irrelevant at the present juncture.

4

1148, 1155-56 (2d Cir. 1993) (citations and internal quotation marks omitted).

**B. 12(b)(6)**

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678-79.

**IV. DISCUSSION**

**A. Subject Matter Jurisdiction**

Plaintiff asserts that the Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 3613 and 12133. Compl. ¶ 2. Section 1331 provides that "district

5

courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiff brings the Complaint under the FHA, 42 U.S.C. § 3613, and the ADA, 42 U.S.C. § 12133, both federal laws.[4]

Defendant argues that the Court lacks subject matter jurisdiction over this action because: (1) Plaintiff lacks Article III standing, Mem. at 9; (2) Plaintiff's claims under the ADA and FHA are "wholly insubstantial and frivolous," id. at 8 (quotation omitted); and (3) in the alternative, the Court should abstain from deciding the present case due to the ongoing Article 78 proceeding, see id. at 21; see also Murtaugh v. New York, 810 F. Supp. 2d 446, 464 (N.D.N.Y. 2011) ("A motion to dismiss based on the abstention doctrine is . . . considered as a motion made pursuant to Rule 12(b)(1).") (quoting City of N.Y. v. Milhelm Attea & Bros., Inc., 550 F. Supp. 2d 332, 341 (E.D.N.Y. 2008)).

### 1. Article III Standing

Article III of the Constitution grants federal courts limited jurisdiction over only "[c]ases" and "[c]ontroversies." U.S. CONST. art. III, § 2, cl. 1; see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). "One element of this case-or-controversy requirement" requires a plaintiff to "establish that [he has] standing to sue." Raines v. Byrd, 521 U.S. 811, 818 (1997) (citing Lujan, 504 U.S. at 561). To establish standing under Article III, a plaintiff must demonstrate that: (1) he has suffered "an injury in fact"; (2) there is a "causal connection between the injury and the conduct

---

[4] The parties do not differentiate between Plaintiff's FHA and ADA claims. See generally Mem.; Resp. "Due to the similarities between the statutes, [the Court] interpret[s] them in tandem." Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 573 n.4 (2d Cir. 2003) (citing Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 45 (2d Cir. 2002)). "Although there may be differences in the [Fair Housing Amendments Act] and ADA, [the Court sees] no material differences presented in this case and the parties have not identified any." Id.

complained of"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 560 (internal citations and quotations omitted).

"Both the [FHA] and the ADA prohibit governmental entities from implementing or enforcing housing policies in a discriminatory manner against persons with disabilities." Tsombanidis, 352 F.3d at 573. Under the FHA, it is "unlawful '[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap.'" Id. (quoting 42 U.S.C. § 3604(f)(1)). "Similarly, the ADA states 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity.'" Id. (quoting 42 U.S.C. § 12132). Both provisions have been interpreted to include discriminatory zoning restrictions. See id. at 574.

The FHA "confers standing to challenge such discriminatory practices on any 'aggrieved person.'" LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 424 (2d Cir. 1995) (citing 42 U.S.C. § 3613(a)(1)(A)). Under the FHA, an "aggrieved person" is one who "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." Id. (citing 42 U.S.C. § 3602(I)). "This definition requires only that a private plaintiff allege 'injury in fact' within the meaning of Article III of the Constitution, that is, that he allege 'distinct and palpable injuries that are 'fairly traceable' to [defendants'] actions.'" Id. (quoting Havens Realty Corp. v. Coleman, 455 U.S. 363, 375-76 (1982)) (alteration in original). Standing under the FHA extends to the full limits of Article III. Havens Realty Corp., 455 U.S. at 372. "Thus the sole requirement for standing to sue under [the

7

FHA] is the Art. III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered 'a distinct and palpable injury.'" Id. (citation omitted).[5]

An organization may have standing on its own behalf, or "on behalf of its members under the theory of organizational or associational standing." Human Res. Research & Mgmt. Grp., Inc. v. Cnty. of Suffolk, 687 F. Supp. 2d 237, 249 (E.D.N.Y. 2010) (citations omitted). An organization "may file suit on its own behalf 'to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.'" Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 649 (2d Cir. 1998) (quoting Warth v. Seldin, 422 U.S. 490, 511 (1975)). In addition, an organization may bring suit on behalf of its members by demonstrating that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id. (quoting Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343-45 (1977)).

"To survive a defendant's Rule 12(b)(1) motion to dismiss for lack of standing, plaintiffs must allege facts that affirmatively and plausibly suggest that [they have] standing to sue." Kiryas Joel Alliance v. Village of Kiryas Joel, 495 F. App'x 183, 188 (2d Cir. 2012) (alteration in original) (internal quotation marks omitted). Though a plaintiff's assertions of standing "need not be crafted with precise detail," Baur v. Veneman, 352 F.3d 625, 631 (2d Cir. 2003), the plaintiff bears the

---

[5] This standard also applies to standing under the ADA. Title II of the ADA "extends relief to 'any person alleging discrimination on the basis of disability.'" Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 47 (2d Cir. 1997), recognized as superseded on other grounds, Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 171 n.7 (2d Cir. 2001) (quoting 42 U.S.C. § 12133). "[T]he use of such broad language in the enforcement provisions of the statutes 'evinces a congressional intention to define standing to bring a private action under [Title II] as broadly as is permitted by Article III of the Constitution.'" Id. (citations omitted).

burden of establishing each of the elements required to assert standing, <u>Lujan</u>, 504 U.S. at 560

(citing <u>FW/PBS, Inc. v. Dallas</u>, 493 U.S. 215, 231 (1990) and <u>Warth</u>, 422 U.S. at 508 (1975)).

Plaintiff alleges the following facts in support of standing under the FHA and ADA: (1)

Plaintiff operates residential programs for people with disabilities, Compl. ¶ 4;[6] (2) Plaintiff's

proposed residence would serve individuals suffering from alcohol and substance abuse, <u>id.</u> ¶ 6; (3)

Plaintiff's proposed residence is subject to the City's Zoning Ordinance and is located in an R2A

district, <u>see id.</u> ¶ 18; (4) community residences for individuals with disabilities are "not permitted as

of right in any residential or other district within the City," <u>id.</u> ¶ 17; and (5) Plaintiff must apply for

a use variance in order to establish its proposed residence in an R2A zone, while other multi-unit

residences such as dormitories and nursing homes need only acquire a special use permit, <u>see id.</u>

¶¶ 20-21.

Plaintiff argues that as an organization serving individuals with disabilities, it has standing to

bring a facial challenge to the Zoning Ordinance under the FHA and ADA. Resp. at 7. Moreover,

Plaintiff argues that the procedures required to obtain a special use permit are "less onerous" than

those required to obtain a use variance. <u>Id.</u> at 7-8. Because the City's Zoning Ordinance places a

"stricter standard on community residences for people with disabilities than other residences and

facilities that appear to be less residential . . . [Plaintiff] is injured by the zoning ordinance." <u>Id.</u> at

8. Furthermore, Plaintiff argues that "housing discrimination causes a uniquely immediate injury."

<u>Id.</u> (citation omitted). Finally, Plaintiff argues that without the Zoning Ordinance, it would be able

to establish its proposed residence. <u>Id.</u> at 9.

---

[6] Defendant does not contest that the individuals Plaintiff serves, that is, individuals suffering from alcohol and substance abuse, are "disabled" within the meaning of the statutes. <u>See</u> Mem. at 5.

Defendant argues that Plaintiff lacks standing because the only injury alleged is the BZA's denial of its application for a use variance, and Plaintiff fails to allege facts sufficient to claim that the BZA's decision was discriminatory. <u>See</u> Mem. at 9-10. Furthermore, Defendant argues, because Plaintiff has complied with and benefitted from the Zoning Ordinance in the past, it cannot now challenge the statute based on the BZA's decision regarding this particular residence. <u>See</u> <u>id.</u> at 10-11. In fact, most of Defendant's arguments challenging Plaintiff's standing to bring this action rest on the assumption that Plaintiff brought this action to challenge the BZA's decision. <u>See</u> <u>generally</u> <u>id.</u> at 9-13. However, Plaintiff's Complaint specifically *does not* challenge the BZA's decision in this instance, but rather challenges the Zoning Ordinance as discriminatory on its face. <u>See</u> Compl. ¶¶ 24-32. Therefore, Defendant's arguments related to the BZA's denial of Plaintiff's specific use variance application are immaterial to the present Motion.

Defendant also argues that Plaintiff's allegations of monetary damages are insufficient to confer standing. <u>See</u> Mem. at 11. However, monetary damages are not required in order for a party to have standing under the FHA. <u>See</u> <u>Havens Realty Corp.</u>, 455 U.S. at 373 ("[T]he actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'"). A requirement that an organization serving those with disabilities pay application or licensing fees to comply with a local law constitutes an injury, <u>see</u> <u>Human Res. Research & Mgmt.</u>, 687 F. Supp. 2d at 25, as do allegations that a local law impairs an organization's ability to serve its members, <u>see</u> <u>Havens Realty Corp.</u>, 455 U.S. at 379 ("If, as broadly alleged, petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low-and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact."); <u>see also</u> <u>Ragin v. Harry Macklowe Real</u>

Estate Co., 6 F.3d 898, 905 (2d Cir. 1993) ("The [Havens] Court held that a perceptible impairment of a housing organization's ability to provide counseling and referral services constituted an actionable injury in fact.").

Plaintiff's allegation that the Zoning Ordinance requires it to comply with application requirements that are more burdensome than those required of multi-member dwellings serving people without disabilities, and that the ordinance has prevented Plaintiff from opening the proposed residence to serve its members, is sufficient to show an injury in fact that is "fairly traceable" to Defendant's actions. See LeBlanc-Sternberg, 67 F.3d at 424. Consequently, Plaintiff has demonstrated that it has standing to bring this action on its own behalf under the FHA and ADA. See id.; Innovative Health Sys., 117 F.3d at 47. Furthermore, RSS also has organizational standing to bring this action on behalf of its members, since "(1) it serves a class of individuals with discrimination claims—individuals recovering from substance abuse; (2) the interests of the class are germane to [RSS], which is in the business of developing and operating sober homes; and (3) no individual participation of class members is necessary because the instant litigation involves a facial challenge" to the City's Zoning Ordinance. See Human Res. Research & Mgmt., 687 F. Supp. at 253. Accordingly, Plaintiff has demonstrated that it has standing to pursue this action.

### 2. Substantiality of Claim

Defendant also argues that Plaintiff's facial challenge to the Zoning Ordinance is frivolous because Plaintiff could have obtained review of the BZA's decision through an Article 78 proceeding, and because Plaintiff's allegations are conclusory. Mem. at 8. Moreover, Defendant argues, because Plaintiff already operates residences in the City under the Zoning Ordinance, its facial challenge to the ordinance is unfounded, and brought solely to allege federal jurisdiction. Id.

11

Finally, Defendant argues that by bringing a simultaneous Article 78 proceeding seeking "substantively identical" relief, Plaintiff has effectively acknowledged that this matter should be before a state court. Id. Defendant argues that these facts demonstrate that Plaintiff's claims under the FHA and ADA "clearly appear[] to be immaterial and made solely for the purpose of obtaining jurisdiction . . . [and are] wholly insubstantial and frivolous." Id. (citing Bell v. Hood, 327 U.S. 678, 682-83 (1946)).

The Court first addresses Defendant's arguments regarding the Article 78 proceeding. Contrary to Defendant's conclusory assertions, the relief Plaintiff seeks in the Article 78 proceeding is not "substantively identical" to the relief sought in the instant case, nor could Plaintiff have raised the instant claims in an Article 78 proceeding. Plaintiff's Article 78 Petition seeks review of the BZA's decision to deny Plaintiff a use variance for Plaintiff's proposed residence. See Art. 78 Pet. Here, however, Plaintiff seeks a ruling on the constitutionality of the Zoning Ordinance itself. See generally Compl. Furthermore, Plaintiff could not have challenged the constitutionality of the Zoning Ordinance in an Article 78 proceeding. See Kovarsky v. Hous. & Dev. Admin. of City of N.Y., 286 N.E.2d 882, 885 (1972) ("While an article 78 proceeding is generally the proper vehicle to determine whether a statute, ordinance, or regulation has been applied in an unconstitutional manner, the rule is different when the issue is the constitutionality of legislative action. We have consistently held that a proceeding under article 78 is not the proper vehicle to test the constitutionality of legislative enactments.") (internal citations omitted). Therefore, since Plaintiff could not have raised the instant claims in an Article 78 proceeding, and because Plaintiff seeks different relief in the present action, Plaintiff's claims under the ADA and FHA do not appear to have been made "solely for the purpose of obtaining jurisdiction."

As to Defendant's argument that Plaintiff may not simultaneously comply with the Zoning Ordinance and challenge its constitutionality, that argument is unfounded. There is no requirement that "a plaintiff who wishes to challenge the constitutionality of a law . . . confess that he will in fact violate that law." Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2345 (2014). "The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 129 (2007). Therefore, Plaintiff's prior compliance with the Zoning Ordinance does not defeat subject matter jurisdiction in this case.

### 3. Abstention[7]

Defendant argues that the Court should abstain from deciding this case under the Younger abstention doctrine. See Mem. at 21-23. The Supreme Court's ruling in Younger v. Harris, 401 U.S. 37 (1971), established that a federal court, although it properly has jurisdiction, should abstain from hearing a case that would interfere with an ongoing state criminal proceeding. "Younger generally prohibits courts from 'taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings' so as to avoid unnecessary friction." Spargo v. N.Y. Comm'n on Judicial Conduct, 351 F.3d 65, 75 (2d Cir. 2003) (citing Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002)). Although Younger abstention was developed to

---

[7] In the Reply, Defendant argues that the Court should abstain from deciding this case based on both the Younger and Colorado River abstention doctrines. Reply at 7. However, in its initial Motion and Memorandum, Defendant's abstention arguments focused exclusively on Younger abstention. See Mem. at 21-23. Though Defendant cited to Colorado River for the principle of abstention generally, see id. at 6, Defendant made no arguments in its initial Motion or Memorandum regarding Colorado River abstention, see generally id. As a general rule, "new arguments may not be made in a reply brief." Ernst Haas Studio, Inc. v. Palm Press, Inc., 164 F.3d 110, 112 (2d Cir. 1999) (citing Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993)). Therefore, the Court will only consider Defendant's abstention arguments regarding Younger abstention.

prohibit a federal court's interference with an ongoing state criminal proceeding, it has since been

extended to certain civil cases. See generally Huffman v. Pursue, 420 U.S. 592 (1975).

Both parties cite a three-part test to determine whether Younger abstention applies. See

Mem. at 22; Resp. at 10. However, the Supreme Court has "rejected this three-part test in favor of a

so-called categorical approach." Bracci v. Becker, 568 F. App'x 13, 14 n.1 (2d Cir. 2014) (citing

Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584 (2013)). In Sprint, the Supreme Court clarified that

Younger abstention applies only to three "exceptional" categories of cases, identified in New

Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350 (1989) ("NOPSI").

Sprint, 134 S. Ct. at 593-94. These three categories are: "(1) 'state criminal prosecutions'; (2) 'civil

enforcement proceedings'; and (3) civil proceedings that 'implicate a State's interest in enforcing

the orders and judgments of its courts.'" Mir v. Shah, 569 F. App'x 48, 50 (2d Cir. 2014) (quoting

Sprint, 134 S. Ct. at 588). These categories "define Younger's scope." Sprint, 134 S. Ct. at 591.

Following Sprint, a federal court should not "focus[] on the substance of the claims involved in the

state and federal proceedings by asking whether they implicate[] an important state interest." Mir,

569 F. App'x at 50. Rather, Younger abstention only applies if the case fits into one of the three

enumerated categories. See id.

Defendant argues that pursuant to Younger, the Court should abstain from deciding the

present case because of the ongoing Article 78 proceeding. See Mem. at 22-23. However,

Defendant does not argue that the Article 78 proceeding constitutes one of the three categories of

cases that warrant Younger abstention. Rather, Defendant argues that Younger abstention applies

because: (1) the Article 78 proceeding is "judicial in nature in that the Plaintiff . . . is simultaneously

pursuing relief . . . for the same sequence of events and alleged resulting injury as complained of

14

herein, id. at 22; (2) the Article 78 proceeding "necessarily implicates important state interests in that it seeks evaluation of a . . . municipality's authority to create and enforce its own zoning codes, id.; (3) Plaintiff is effectively "'double-dipping' for relief" by bringing both proceedings, id. at 23; and (4) Plaintiff could have brought the instant claims in the Article 78 proceeding, id.

Defendant's arguments misunderstand the role of Younger abstention.  As a general matter, "federal courts are obliged to decide cases within the scope of federal jurisdiction.  Abstention is not in order simply because a pending state-court proceeding involves the same subject matter." Sprint, 134 S. Ct. at 588 (citing NOPSI, 491 U.S. at 373).  The Article 78 proceeding in question does not fall within one of the enumerated categories of cases that trigger Younger abstention.  It is not a state criminal proceeding, nor is it a civil enforcement proceeding, as it is not "akin to a criminal prosecution." Id. (citations and quotation omitted).  Furthermore, as the proceeding in question does not involve review of a court judgment, it does not "implicate a State's interest in enforcing the orders and judgments of its courts." Id.  The Court therefore finds that Younger abstention is inapplicable to the instant case.

**B. Failure to State a Claim**

Defendant next argues that Plaintiff fails to state a claim under either the FHA or ADA. Mem. at 13-20.  "Both the [FHA] and the ADA prohibit governmental entities from implementing or enforcing housing policies in a discriminatory manner against persons with disabilities." Tsombanidis, 352 F.3d at 573.  Under the FHA, it is "unlawful '[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap.'" Id. (quoting 42 U.S.C. § 3604(f)(1)).  "Similarly, the ADA states 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or

15

be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity.'" Id. (quoting 42 U.S.C. § 12132). Both provisions prohibit discriminatory zoning restrictions. See id. at 574.[8]

### 1. Legal Standard

The parties disagree about the legal standard applicable to Defendant's 12(b)(6) Motion. Defendant argues that the theories generally available to establish a violation of either the FHA or the ADA apply to the instant Motion. Mem. at 15. That is, "[t]o establish discrimination under either the [FHA] or the ADA, plaintiffs have three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." Tsombanidis, 352 F.3d at 574 (citation omitted); see also Mem. at 15 (citing Quad. Enters. Co. v. Town of Southold, 369 F. App'x 202, 205 (2d Cir. 2010)). Therefore, Defendant argues that Plaintiff must make out a *prima facie* case under one of these theories. See id.[9] Plaintiff argues that because the Complaint alleges a facial challenge to the Zoning Ordinance, "[t]his is neither a 'disparate impact' case nor a 'reasonable accommodation' case nor even a traditional 'discriminatory intent' case." Resp. at 14. Rather, Plaintiff argues, in a case involving a facial challenge to a statute, "a plaintiff makes out a prima facie case of intentional discrimination . . . merely by showing that a protected group has been subjected to explicitly differential treatment by a

---

[8] As noted *supra* n.4, the Court will consider Plaintiff's ADA and FHA claims in tandem.

[9] Defendant further argues that "[b]ecause Plaintiff's complaint fails to clearly articulate upon which theory it is precisely attempting to advance its claim, the Complaint should be dismissed with prejudice at the outset." Mem. at 15. "The 'essence of a cause of action,' however, 'is found in the facts alleged and proven by the plaintiff, not the particular legal theories articulated.'" Diamond v. Local 807 Labor Mgmt. Pension Fund, 595 F. App'x 22, 25 (2d Cir. 2014) (quoting Oneida Indian Nation of N.Y. v. Cnty. of Oneida, 617 F.3d 114, 139 (2d Cir. 2010)). Defendant's argument therefore has no merit.

legislative enactment." Id. at 15 (citing Cmty. House, Inc. v. City of Boise, 490 F.3d 1041, 1050

(9th Cir. 2007) and Human Res. Research & Mgmt., 687 F. Supp. at 254-55).

The Court finds that Plaintiff's standard applies to the instant Motion. Facial challenges to

statutes under the FHA and ADA are generally evaluated under the rubric of intentional

discrimination, see Human Res. Research & Mgmt., 687 F. Supp. at 254, using the burden-shifting

framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), Mitchell v.

Shane, 350 F.3d 39, 47 (2d Cir. 2003) (citing Robinson v. 12 Lofts Realty, Inc., 610 F.2d 1032,

1038 (2d Cir. 1979)); see also Cabrera v. Jakabovitz, 24 F.3d 372, 383 (2d Cir. 1994) ("[T]he

framework of burdens fashioned in Title VII cases is fully applicable to Title VIII housing

discrimination cases."). Under this framework, a plaintiff must first present a *prima facie* case of

discrimination; the burden then shifts to defendant to assert a "legitimate, nondiscriminatory

rationale for the challenged" action; if defendant makes that showing, the burden returns to plaintiff

"to demonstrate that discrimination was the real reason for the defendant's action." Mitchell, 350

F.3d at 47 (citations omitted).

Though a plaintiff in a discrimination case need not plead a *prima facie* case of

discrimination in order to survive a motion to dismiss, Leibowitz v. Cornell Univ., 445 F.3d 586,

591 (2d Cir. 2006) (citation omited), "a court may still consider the elements of a *prima facie* case

to determine whether Plaintiff has given 'fair notice' of [its] claim," Jones v. Onondaga Cnty. Res.

Recovery Agency, No. 13-CV-01425, 2014 WL 2480170, at *6 (N.D.N.Y. June 3, 2014) (citing

Corbett v. Napolitano, 897 F. Supp. 2d 96, 111 (E.D.N.Y. 2012)).[10] Ordinarily, in order to make out

---

[10] At the motion to dismiss stage, Plaintiff need not address the subsequent steps of the
McDonnell Douglas burden-shifting framework. See Boykin v. KeyCorp, 521 F.3d 202, 212 (2d
Cir. 2008) ("[T]he McDonnell Douglas burden-shifting framework 'is an evidentiary standard, not a

a *prima facie* case of disparate treatment under the FHAA and ADA, "plaintiffs must present evidence that 'animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive.'" Quad Enters. Co., 369 F. App'x at 207 (citations omitted).

However, "[w]hether a[] . . . practice involves disparate treatment through explicit facial discrimination does not depend on why the [municipality] discriminates but rather on the explicit terms of the discrimination." See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc., 499 U.S. 187, 199 (1991) (evaluating disparate treatment claim in Title VII case). "With regard to facially discriminatory housing policies, under the Johnson Controls approach, 'a plaintiff makes out a prima facie case of intentional discrimination under the [Fair Housing Act] merely by showing that a protected group has been subjected to explicitly differential—i.e. discriminatory—treatment.'" Cmty. House, Inc., 490 F.3d at 1050 (quoting Bangerter v. Orem City Corp., 46 F.3d 1491, 1501 (10th Cir. 1995)); see also L.C. v. LeFrak Org., Inc., 987 F. Supp. 2d 391, 401 (S.D.N.Y. 2013) ("[P]laintiff did not need to allege discriminatory animus for her disparate treatment claim to be sufficiently pleaded. It was sufficient that the plaintiff stated her protected status, set forth the circumstances under which she was treated differently, and included an allegation that this differential treatment was on the basis of her protected status.") (citing Boykin, 521 F.3d at 215) (internal quotation marks omitted); Human Res. Research & Mgmt., 687 F. Supp. at 254. Though a plaintiff may eventually be required to show discriminatory animus in order to prevail on its claim, such a showing is not necessary to survive a motion to dismiss. See Jones v. U.S. Dep't of Hous. & Urban Dev., No. 11 CV 0846, 2012 WL

pleading requirement.'") (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002)).

1940845, at *3 (E.D.N.Y. May 29, 2012) ("[A] plaintiff in stating a claim under the FHA need

allege only discriminatory effect. To make out a disparate treatment claim under Section 3604(b) of

the FHA, however, plaintiff would still ultimately be required to meet the burden-shifting

framework set forth by the Supreme Court in . . . McDonnell Douglas . . . which at the very least

would demand an allegation of differential treatment of similarly situated persons or groups.

[However,] plaintiff is not required to satisfy this *prima facie* burden at the pleading stage.")

(internal citations and quotation marks omitted).

> ## 2. *Analysis*

Plaintiff alleges the following facts to support its claims under the FHA and ADA: (1)

Plaintiff operates residential programs for people with disabilities, Compl. ¶ 4; (2) Plaintiff's

proposed residence would serve individuals suffering from alcohol and substance abuse, id. ¶ 6; (3)

Plaintiff's proposed residence is subject to the Zoning Ordinance and is located in an R2A district,

see id. ¶ 18; (4) community residences for individuals with disabilities are "not permitted as of right

in any residential or other district within the City," id. ¶ 17;[11] (5) Plaintiff must apply for a use

variance in order to establish its proposed residence in an R2A zone, while other multi-unit

residences such as dormitories and nursing homes need only acquire a special use permit, see id.

¶¶ 20-21; and (6) individuals seeking a use variance must show that regulations pose an

---

[11] Defendant argues that Plaintiff's claim must fail because Defendant has not "actively exclud[ed] any and all community residences seeking establishment within" the City. See Mem. at 20-21. However, Plaintiff never claims that all community residences are banned from the City, but rather that no community residences for individuals with disabilities may be established *as of right*, see Compl. ¶ 17, and that such residences face more onerous procedures than other community residences seeking establishment within the City, see Resp. at 15.

"unnecessary hardship," while those requesting a special use permit need not make that showing, see Zoning Ordinance §§ 375-26(2)(a), 375-27.

Defendant argues that Plaintiff has failed to make out a *prima facie* case of disparate treatment because Plaintiff has not alleged facts suggesting that it was denied a use variance permit because of the individuals it serves, and because the BZA had legitimate reasons to deny the permit. Mem. at 15-16. Once again, Defendant appears to misunderstand Plaintiff's claim in this action. Plaintiff does not challenge the BZA's denial of its permit, but rather alleges that the Zoning Ordinance itself is facially discriminatory. See Resp. at 1.

Defendant also argues that the Zoning Ordinance provides a means for Plaintiff to request an exception to the City's zoning regulations, and that Plaintiff has failed to state a claim because it "has not alleged . . . that it was denied access to these procedures or that the procedure itself was unduly burdensome such that it operated as a prohibition." Mem. at 16. However, to survive a motion to dismiss, Plaintiff need not allege that Defendant's procedures are "unduly burdensome," merely that the Zoning Ordinance treats Plaintiff differently than similarly-situated individuals without disabilities. See Human Res. Research & Mgmt., 687 F. Supp. 2d at 254; Stewart B. McKinney Found., Inc. v. Town Plan & Zoning Comm'n of Town of Fairfield, 790 F. Supp. 1197, 1211 (D. Conn. 1992) ("The Second Circuit has stated that a discriminatory treatment analysis involves differential treatment of similarly situated persons or groups.") (citing Huntington Branch, N.A.A.C.P. v. Town of Huntington, 844 F.2d 926, 933 (2d Cir. 1988) aff'd in part sub nom. Town of Huntington, N.Y. v. Huntington Branch, N.A.A.C.P., 488 U.S. 15 (1988)). Indeed, Defendant cites the standard applicable to a reasonable accommodation claim, not a disparate treatment claim. See Mem. at 16 (citing Quad Enters., 369 F. App'x at 207). Plaintiff explicitly states that it is not

alleging failure to accommodate. See Resp. at 14. The Court therefore finds this argument unavailing.

Plaintiff has alleged that multiple-person dwellings serving people with disabilities are not allowed as of right in residential districts in the City, and that other multiple-person dwellings such as dormitories and nursing homes are subject to a less burdensome process to establish residences in the City than are homes serving people with disabilities. See Compl. ¶¶ 17-18, 20-21; Resp. at 15; Zoning Ordinance §§ 375-26(2)(a), 375-27. These allegations are sufficient to survive a motion to dismiss. See Human Res. Research & Mgmt., 687 F. Supp. at 254 ("In the instant case, it is undisputed that S.C.C. § 450 is discriminatory on its face, in that it imposes restrictions and limitations solely upon a class of disabled individuals—people who are seeking treatment to recover from drug and alcohol addition—that are not generally imposed on others seeking to live in Suffolk County. The law does not regulate apartment houses, multiple dwellings, fraternity and sorority houses, dormitories, or otherwise impose any restrictions on a group of unrelated individuals who are not receiving treatment for addiction from living together. Accordingly, plaintiffs have proven their prima facie case under the FHA."); Hispanic Counseling Ctr., Inc. v. Inc. Vill. of Hempstead, 237 F. Supp. 2d 284, 293 (E.D.N.Y. 2002) ("In this case, the plaintiffs established that the defendants, through their Village Code, ban all clinics and substance abuse treatment centers within the Village. . . . This blanket prohibition is more than mere animosity; it is discrimination on its face.") (internal citations omitted).[12] Even if Plaintiff has an "uphill battle" in bringing a facial

_____

[12] Defendant also argues that Plaintiff has failed to state a claim under disparate impact and failure to accommodate theories. Mem. at 16-20. However, Plaintiff specifically concedes that it does not allege claims under those theories. See Resp. at 14. The Court therefore will not consider Defendant's arguments on these issues.

challenge to the Zoning Ordinance, as Defendant claims, Reply at 3 (citation omitted), the mere fact that "Plaintiff appears to have an uphill battle" is not sufficient to justify dismissing its claims at this time, see Casale v. Reo, No. 04-CV-1013, 2005 WL 1660743, at *10 (N.D.N.Y. July 13, 2005) (Kahn, J.). The Court therefore finds that Plaintiff has alleged facts sufficient to state a claim under the FHA and ADA.

### C. Punitive Damages

Defendant argues that "Plaintiff is prohibited from recovering punitive damages as a matter of law." Mem. at 23-24. Defendant cites <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247 (1981) for the proposition that municipalities are generally immune from awards of punitive damages, <u>id.</u>, and argues that Plaintiff's demand for punitive damages "is not based on any statutory authority proffered in the language of the FHA or ADA," <u>id.</u> at 24. However, in <u>Fact Concerts</u>, the Supreme Court's holding specifically referred to actions brought under § 1983, <u>Fact Concerts</u>, 453 U.S. at 272 (1981), and the Court noted that "[t]he general rule today is that no punitive damages are allowed *unless expressly authorized by statute*," <u>id.</u> at 260 n.21 (emphasis added). As Plaintiff correctly points out, punitive damages are specifically authorized under the FHA. 42 U.S.C. § 3613(c)(1) ("In a civil action under subsection (a) of this section, if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages"); <u>United States v. Space Hunters, Inc.</u>, 429 F.3d 416, 427 (2d Cir. 2005) ("The FHA expressly provides for the recovery of punitive damages by plaintiffs who have suffered discriminatory housing practices.") (citation omitted). Therefore, Defendant's arguments on this issue are unavailing.

## V.  CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 11) to dismiss is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:      July 02, 2015
            Albany, NY


_____
Lawrence E. Kahn
U.S. District Judge